AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 2 9 2016

MATTHEW J. DYKMAN
CLERK**

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

"PaceArrow Vision" Motorhome, at
88/89 Wallner Dr. Veguita, NM 87062

)
)
)   Case No. 16 MR 162
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____State_____ District of _____New Mexico_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 (a)(1) | Possession with intent to manufacture, distribute, or dispense, a controlled substance. |

The application is based on these facts:
Please refer to the Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Brett Finn, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 2/29/16

City and state: Albuquerque, NM

_____
Judge's signature

Steven C. Yarbrough, U.S. Magistrate
Printed name and title

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PROPERTY AND PREMISES LOCATED AT:<br><br>"PaceArrow Vision" Motorhome, at 88/89 Wallner Dr., Veguita, NM 87062<br>Sandra COOK<br><br>As more fully described in Attachment A, incorporated herein by reference | No. |

### AFFIDAVIT IN SUPPORT OF

### AN APPLICATION FOR A SEARCH WARRANT

I, Brett Finn, being first duly sworn, hereby state as follows:

### INTRODUCTION AND AGENT BACKROUND

1.  I, Brett Finn, am employed as a Special Agent by the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), Border Enforcement Security Task Force, Albuquerque, New Mexico (BEST/ABQ) and have been employed in this position since June 2010. I am an investigative law enforcement officer of the United States, and I am empowered by law to conduct investigations and make arrests for felony offenses. I have been a federal law enforcement officer for over five years. I successfully completed eleven weeks of Criminal Investigator Training (CITP), and the Immigration and Customs Enforcement Special Agent Training (ICE-SAT) at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia. I hold a Bachelor's Degree in Criminal Justice and a Master's Degree in Criminal Justice and Criminology from Sam Houston State University in Huntsville, Texas.

2.  As a HSI Special Agent, I am authorized and presently assigned to investigate violations of Title 21, United States Code, Section 841 and other violations of federal law. I have also acquired knowledge and information about such offenses, and the various means and methods by which they are furthered from numerous sources, including formal and informal training from other law enforcement officers, investigators, and Special Agents; interviews of informants and arrestees, and interviews of other knowledgeable individuals. I have received extensive training and practical experience pertaining to federal criminal procedures, federal criminal statutes, United States Immigration and Nationality law, United States Customs laws and regulations, and other federal and

state laws pertaining but not limited to; the importation and distribution of controlled substances pursuant to, bulk cash smuggling, money laundering, asset forfeiture, firearms, and conspiracy. I am authorized, and presently assigned to investigate violations of the Comprehensive Drug Abuse and Prevention and Control Act of 1970, Title 21, United States Code, Section 801, et seq, Title 18 United States Code, Section 922 and other violations of federal law. I have attended the Criminal Investigator Training Program (CITP), and the Homeland Security Investigations Special Agent Training Program (HSI-SAT) at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia.

3.      I have also acquired knowledge and information about such offenses, and the various means and methods by which they are furthered from numerous sources, including formal and informal training from other law enforcement officers, investigators, and Special Agents; interviews of informants and arrestees, and interviews of other knowledgeable individuals. I have participated in numerous investigations of drug distribution organizations and money laundering organizations which operated at local, state, regional and international levels. As a result, I am familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations to purchase, transport, store and distribute drugs and to hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

4.      The statements contained in this affidavit are based upon your Affiant's investigation, training, and experience; information provided by Special Agents of HSI, and information provided by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 21 are located within the property which is the subject matter of this affidavit.

5.      This affidavit is made in support of a search warrant to search the property known as a **"PaceArrow Vision" motorhome, at 88/89 Wallner Dr., Veguita, NM 87062, as more fully described in Attachment A (SUBJECT PREMISES)** in connection with the drug trafficking activities of Sandra COOK. The is property identified as "88/89" Wallner Dr. because the property has two dirt roads leading to a single story house on the property. Along Wallner Dr., one of these roads to the house has a mailbox labeled "88," and the other path has a mailbox labeled "89." Both roads lead to the same location and no other permanent residence is located in the area associated with the two mail boxes, except this one single-story home. County records are not available on line and inquiries cannot be made to resolve this question about the house number; however, this discrepancy is moot because the **SUBJECT PREMISES** (a "PaceArrow Vision" motorhome) is parked next to the house, regardless of it being numbered 88 or 89 Wallner Dr. This warrant does not include the single-story home and permission is not sought to enter the home, regardless of it being numbered 88 Wallner or 89 Wallner.

## RELEVANT STATUTES

6. This investigation concerns alleged violations of:

   a) **Title 21, United States Code, Section 841(a)(1) and 846** – Prohibits a person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; and conspiring with others to do so.

   ## BACKGROUND REGARDING DRUG TRAFFICKING

7. Based upon my training, experience, and participation in other investigations involving trafficking of controlled substances, my conversations with other experienced investigators and law enforcement agents with whom I work, and interviews of individuals who have been involved in the trafficking of controlled substances, I have learned and know the following:

   a) It is common to find papers, letters, billings, documents, and other writings, which show ownership, dominion, and control of businesses, residences, outbuildings on the property of the residences, and/or vehicles in the business, residence and vehicles of drug traffickers. Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the Subject Premises also include canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, keys, financial papers, rental receipts and property ownership papers, personal and business telephone and address books and telephone toll records; and other personal papers or identification cards in the names of subjects involved in the criminal activity being investigated.

   b) It is common for drug traffickers to secret away proceeds of illegal drug sales and records of illegal drug transactions in secure locations within their businesses, residences, outbuildings on the property of their residences, and/or vehicles for their ready access and to conceal from law enforcement authorities. Persons involved in the importation, distribution and possession with intent to distribute controlled substances frequently keep on hand, in secretive locations, large quantities of cash obtained from their sales and are used to facilitate other drug related sales transactions. Such funds allow the seller to purchase new supplies of drugs to replenish their stocks depleted by ongoing sales. Other documents evidence purchases, expenditures made with these unlawful proceeds including Federal and State tax records; loan records; mortgages, deeds, titles, certificates of ownership, and registration of documents; records disclosing investments and securities; safe deposit box rental records and keys and photographs. I know from my training and experience that often items of value are concealed by persons involved in large scale drug trafficking inside of safes, lock boxes, and other secure locations within their residences, outbuildings, and vehicles.

   c) Drug traffickers often maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of

controlled substances. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances and/or controlled substances to their clients, or alternatively, will be "fronted" these items from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past (pay) and for payments expected (owe) as to the trafficker's supplier and the trafficker's dealer(s). I also know that the aforementioned paper and electronic books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them. These documents include travel records, receipts, airline tickets, auto rental agreements, invoices, and other memorandum disclosing acquisition of assets and personal or business expenses. I also know that the most promising place to find such items is within drug traffickers' residences, the outbuildings on the property of their residences, and at their businesses. Drug traffickers often maintain books, records or other recorded information relating to names, addresses and/or telephone numbers of their suppliers and customers with whom they engage in illegal controlled substance transactions within their residences and at their businesses.

d) It is a common practice for drug traffickers to conceal large sums of money, either the proceeds from drug sales or monies to be used to purchase controlled substances at their residences, outbuildings on the property of their residences, vehicles, storage lockers and businesses. Drug traffickers often make use of wire transfers, cashier's checks, and money orders to pay for controlled substances. Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained at the business or residence.

e) Drug traffickers amass large proceeds from the illegal sale of controlled substances that they attempt to legitimize. To accomplish this goal, drug traffickers utilize domestic banks and their attendant services, securities, cashier's checks, safe deposit boxes, money drafts, real estate, shell operations, and business fronts. Persons involved in drug trafficking and/or money laundering keep papers relating to these activities for future reference.

f) Drug traffickers often utilize false identities and fake identification to facilitate their distribution activities. I know they also use "straw purchasers" - purchasing items in the names of other people while keeping the real interest in the asset. They also commonly purchase, keep, or maintain valuables and assets, including vehicles and real property, in the names of the prior owners, relatives, friends, or dummy businesses or names in an attempt to hide wealth, complicate police efforts to discover or track their activities and acquisitions, and to avoid legal forfeiture if they are apprehended for selling or manufacturing controlled substances.

g) Drug traffickers frequently try to conceal their identities by using fraudulent names and identification cards. Once identities have been created or stolen from other citizens, clandestine manufacturers will use those identifications to falsify records such as Department of Motor Vehicle and phone records for the purpose of theft of services and to evade detection by law enforcement.

h) Drug traffickers take, or cause to be taken, photographs or videos of themselves, their associates, their property, and their product. These traffickers usually maintain these photographs or videos in their possession. These items may also be stored in electronic devices.

i) It is common for drug traffickers to sell paraphernalia and other items which are associated with the sale and use of controlled substances such as scales, containers, cutting agents and packaging materials associated with the manufacturing, processing and distribution of controlled substances, and that these items may be located in their businesses, residences, outbuildings on the property of their residences, storage lockers, and/or vehicles.

j) Drug traffickers commonly have in their possession, that is, on their person, and/or at their businesses, residences, storage lockers, and/or vehicles, firearms, and other weapons, which are used to protect and secure their property.

k) Drug traffickers will file tax returns, but either improperly report their actual earnings by not reporting earnings from their drug activities, or claim earnings not actually earned, in order to legitimize purchases and expenses not consistent with their actual legitimate earnings. These also are documents commonly found in trafficker's residences, storage lockers, vehicles, and places of business.

l) Drug traffickers use computers and cellular mobile telephones for ready access to their suppliers and clientele for the purpose of maintaining their illegal trafficking business. Such equipment often contains recorded evidence of the drug trafficking activities, to include drug ledgers, text messages, phone numbers, customer lists, photographs, and videos.

m) I am aware that courts have recognized that evidence of illegal trafficking of controlled substances, such as the items described above, is likely to be found where the dealers live even if the distribution or transaction did not occur at the residence.

n) The aforementioned items are often maintained in the drug traffickers' businesses, residences, outbuildings, public and private storage facilities, and/or vehicles where the trafficker has access to them. These records are commonly kept for an extended period of time.

## DETAILS OF INVESTIGATION

8. On June 30, 2015, at approximately 0930 hours, Bernalillo County Sheriff's Department (BCSD) Detectives and a Homeland Security Investigations (HSI) Task Force Officer (TFO) executed a State of New Mexico search warrant at 2732 Alcazar NE, Albuquerque, NM 87110, the home of Sandra COOK.

9. Upon arrival at the residence at 2732 Alcazar St NE, Albuquerque, NM 87110, BCSD Detective J. Koppman observed a male subject, later identified as Jeffery BURLINGAME, park his vehicle and walk up to the residence. When BCSD Detective J. Koppman asked who the house

5

belonged to, Jeffery Burlingame stated the residence belongs to his girlfriend, Sandra COOK. When Jeffery BURLINGAME rang the doorbell of the residence, COOK answered the door. BCSD Detectives and the HSI TFO then served their State of New Mexico search warrant by entering the residence.

10. During the search warrant, BCSD Detective J. Koppman discovered and seized two (2) black bags containing a gross, combined weight of approximately 2886 grams (6.3 lbs) of a crystalline substance, which field tested positive for the properties of methamphetamine. Detective Koppman also discovered and seized approximately $22,507 in U.S. currency, of which $17,307.00 was discovered in the same bag with methamphetamine.

11. In a post-Miranda interview with BCSD Detective J. Koppman, Sandra COOK initially denied ownership of the methamphetamine. Eventually, COOK stated that the methamphetamine, discovered by Detectives, belonged to her and that it was for distribution. COOK added that she was going to take the methamphetamine back to Arizona and exchange it, because it was not as strong as the methamphetamine she is used to obtaining. COOK stated that her fiancé, Jeffrey BURLINGAME, goes with her to Arizona to pick up methamphetamine.

12. On September 10, 2015, the grand jury returned a one count indictment alleging a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) in D. N.M. 15-CR-3224 WJ. On September 11, 2015, a federal arrest warrant was issued for COOK based on this indictment.

13. On October 7, 2016 [handwritten: 2015 ff guy], at 6201 Dungan St. NE, Albuquerque, NM 87106, I spoke with Jeffrey BURLINGAME, who COOK identified in June 2015 as her fiancé on a jail booking sheet. I notified BURLINGAME that COOK is a federal fugitive with a federal warrant, and she needs to turn herself in.

14. On November 19, 2015, the Honorable U.S. Magistrate Judge Steven Yarbrough signed a second tracking warrant for a 1999 Ford E-250 van, white in color, bearing New Mexico license plate number 653PKR, registered to Jeffrey BURLINGAME. During this 45 day period, the Ford van traveled approximately 2 times to an address identified as 88/89 Wallner Dr., Veguita, NM 87062. (The address of the **SUBJECT PREMISES**). Again, COOK was not located. The warrant expired and agents removed the tacking device as authorized by this Court.

15. On February 1, 2016, HSI SA Finn was contacted by another federal law enforcement officer who stated that a reliable source of information (SOI) identified 88 Wallner Dr., Veguita, NM 87062 as a residence for COOK. The SOI stated the COOK is staying inside an RV (**SUBJECT PREMISES**) at the address. The SOI stated that COOK is trafficking methamphetamine from this location.

16. During the week of February 7, 2016, the reliable SOI visited 88 Wallner Dr., Veguita, NM 87062 while being visually and audibly monitored by Agents. At the **SUBJECT PREMISES**, the

SOI encountered an individual who stated that COOK was not currently at the location; however, the individual in the RV did not deny that COOK lived there or that she was unknown. Agents heard this conversation.

17. As of February 28, 2016, the **SUBJECT PREMISES** ("PaceArrow Vision" motorhome) appears unmoved since February 2, 2016.

18. On February 24, 2016, at approximately 12:38 pm, I observed Jeffrey BURLINGAME arrive at 10819 Habanero Way SE, Albuquerque, NM 87123 in his 1999 Ford E-250 van and park in the driveway. He entered the residence with what appeared to be a box in his hands. Within a few minutes, he walked out of the residence, returned to the van, and removed two, dark colored bags, one of which was a blue backpack. Then, BURLINGAME returned inside the residence with those two bags.

19. At approximately 12:45 pm, HSI Agents and Detectives with Bernalillo County Sherriff's Department served an arrest warrant at the residence of 10819 Habanero Way SE, Albuquerque, NM 87123, for Sandra COOK, a federal fugitive whom I had probable cause to believe was presently located at the residence.

20. Upon entering 10819 Habanero Way SE, Albuquerque, NM 87123, Agents located fugitive Sandra COOK as well as Jeff BURLINGAME near the kitchen. COOK was arrested based on her federal warrant, which was for violation of 21 USC 841.

21. On February 24, 2016, at approximately 1655 hours, the Honorable U.S. Magistrate Judge Steven Yarbrough signed a search warrant for 10819 Habanero Way SE, Albuquerque, NM 87123, pursuant to an investigation of 21 USC 841. At approximately 1700 hours, HSI Special Agents and Detectives with Bernalillo County Sherriff's Department served the search warrant at 10819 Habanero Way SE, Albuquerque, NM 87123.

22. During the search of the bedrooms of 10819 Habanero Way SE, Agents only observed personal belongings which appeared to belong to a female (i.e., clothes, toiletries, cosmetics). Based on the personal belongings in the residence, there appeared to only be one occupant.

23. Concealed underneath a chair cushion in the living room of the residence, Agents discovered approximately 53 grams of a crystalline substance in a plastic baggie. This substance field tested positive for the properties of methamphetamine.

24. During the search warrant, Agents removed the contents of a yellow Dewalt tool bag, which appeared to be a bag that I observed BURLINGAME carry into the residence. This bag was located on a table, approximately 6 feet from where BURLINGAME was observed when Agents entered the

7

residence, and approximately 4 feet from where COOK was observed. HSI Special Agent J. Harrison searched through the Dewalt tool bag on the kitchen table. Inside the tool bag, Agent Harrison discovered a crystalline substance in a plastic ziplock bag, with a gross weight of approximately 460 grams. This substance field tested positive for the properties of methamphetamine. In my training and experience, I know this is an amount for distribution. Inside the tool bag, Agent Harrison also discovered approximately $1,589.00 in U.S. currency, which he recognized as bulk cash drug proceeds.

25. Inside a wallet in the toolbag, Agent Harrison discovered a credit card bearing the name of Jeffrey BURLINGAME as well as the New Mexico driver's license of Sandra COOK. Inside the tool bag, Agents also found a large, loose quantity of small rubber bands of the same size. In my training and experience, drug traffickers utilize such rubber bands for organizing U.S. currency from drug proceeds. Inside the bag, Agents also found a scanner / debugger which is used for identifying communication signals, like an audio wire on an undercover agent.

26. In the garage of the residence, Agents discovered a white Saab sedan, with NM LP # 021SZL. This vehicle is registered to BURLINGAME, who later told Agents that COOK uses the vehicle. Inside the vehicle, Agents discovered a small, individual baggie containing approximately half a gram of a crystalline substance which field tested positive for the properties of methamphetamine.

■■■■ In the passenger seat of the Saab sedan, Agents discovered a journal, which was blue in color. The journal contains several pages with columns of numbers that appear to be tabulation of money transactions. On one page, a page-length column of numbers are all in the thousands and tens of thousands. For example, one line states, "Ed +4000." On the kitchen table of the residence, I observed a piece of paper with the name "KRIGLESTEIN" written on it. According to a reliable source of information, Ed KRIGLSTEIN distributes methamphetamine for which COOK is the source of supply. On February 8, 2016, KRIGLSTEIN was arrested by the Drug Enforcement Administration for selling methamphetamine. As a second example, beneath the line that states "Ed+4000," there is a line that states, "Geo +2000." According to another reliable source of information, George MARTINEZ distributes methamphetamine for which COOK is a source of supply. The arrest history of MARTINEZ shows numerous arrests for methamphetamine possession. Based on my training and experience, I believe the journal contains drug ledger information and the numbers indicate the value, in U.S. currency, of controlled substances being trafficked and / or the value of drug debts owed / paid. Even if the abbreviated entries of one purported last name and another first name are not accurate associations, the nature and type of information of the full ledger is consistent as a journal of transactions that does not appear to be consistent with BURGLINGAME's reported occupation of plumber (general contactor).

28. During the search warrant at 10819 Habanero Way SE, Albuquerque, NM 87123, Agents observed two books in the living room titled, "How to Disappear: Erase your digital footprint, leave false trails, and vanish without a trace," and "How to Disappear Completely and Never be Found." I

believe that COOK and BURLINGAME were attempting to learn how to conceal criminal activities.

29. On February 24, 2016, BURLINGAME was arrested for violation of 21 USC 841. During a series of biographical questions to BURLINGAME, I asked his addresses. BURLINGAME provided the address of 6201 Dungan St. NE, Albuquerque, NM 87106. With knowledge that BURLINGAME was the registered owner of the 7 Roberts Dr., Edgewood, NM 87015, I asked him what other places he has besides 6201 Dungan. BURLINGAME indicated that 6201 Dungan is the only place he lives, and he did not mention the 7 Roberts Dr. I asked BURLINGAME about Veguita, and he stated that "we" (referring to BURLINGAME and COOK) have an RV there, which I reasonably believe to be the **SUBJECT PREMISES** based on his known trips to 88/89 Wallner, as recently as December 23, 2015.

30. During surveillance, I have not observed a license plate on the "PaceArrow Vision" motorhome (**SUBJECT PREMISES**), so information about the registered owner is not available.

31. I asked BURLINGAME who owns the house Wallner Dr. in Veguita, and BURLINGAME replied "Mark" but did not know his last name. BURLINGAME claimed to not live at the **SUBJECT PREMISES**. BURLINGAME stated COOK was living in the RV (**SUBJECT PREMISES**), but he did not know how often.

32. According to an HSI Intelligent Research Specialist, the Socorro County Assessor's Office is not automated, so it is not possible to access online property records for the address of 88 Wallner Dr., Veguita, NM 87062 (nor 89 Wallner Dr.). HSI has not visited the Socorro County Assessor's Office to request the records in person, in order to maintain the confidentiality of the investigation.

33. Open source database checks indicate that "Mark Gott" was associated with 89 Wallner Dr., Veguita, NM for the period of 10/1999 – 11/2015.

34. Employment record checks with the State of New Mexico indicate there are no employment records for COOK for the past six years, and there are no employment records for BURLINGAME since 2011. This makes it more likely that COOK has a criminal livelihood.

35. When asked where he is working, BURLINGAME stated he has his own company, "JB Co.," which he has had approximately a year. BURLINGAME indicates he is primarily a plumber because that is what he is licensed for. When asked what Sandra COOK does for work, BURLINGAME stated that every once in a while COOK's mother will give her work doing web design. When asked if COOK had a 9-5 job, BURLINGAME said "no."

9

36. On February 25, 2016, I spoke with a property manager of the townhouse community in which the residence 10819 Habanero Way SE, Albuquerque, NM 87123 was located. This is the location COOK was arrested and appeared to be living while as a fugitive. The property manager stated that the rent for that address was $2,500.00 per month, as the townhouse came fully furnished. The property manager stated the rent was paid in cash.

37. The property manager stated that since 2012 Sandra COOK and Jeffrey BURLINGAME previously rented residences at several, different locations in Albuquerque that their property management company owns. The property manager indicated that COOK and BURLINGAME were previously banned from renting any more properties because the company had suspected them of involvement in drugs after a suspicious measurement scale was found in a previous rental in their name. The residence of 10819 Habanero Way SE, Albuquerque, NM 87123 was in the name of Thomas Harris while COOK and BURLINGAME were there.

38. I believe that the $2,500.00 per month rent, which was paid in cash, was paid with drug proceeds earned by COOK and BURLINGAME due to their lack of apparent income to afford such a high living expense.

39. On February 24, 2016, the Honorable U.S. Magistrate Judge Steven Yarbrough authorized a search warrant for the residence of 6201 Dungan St. NE, Albuquerque, New Mexico 87109, pursuant to investigation of violations of 21 USC 841. The warrant was authorized for any time in the day or night. In Bernalillo County, the registered owner of this address is Jeffrey BURLINGAME, who claimed it as his primary residence on February 24, 2016. On this date, Sandra COOK also claimed this as her mailing address during a series of biographical questions.

40. On February 24, 2016, at approximately 10:19 pm, HSI Special Agents and Detectives with Bernalillo County Sherriff's Department served the search warrant at 6201 Dungan St. NE, Albuquerque, New Mexico 87109. In the residence, Agents observed what appeared to be disassembled laboratory equipment, with an unknown residue. Agents observed a large quantity of cheap cell phones which appeared to be no longer in use. In my training and experience, drug traffickers purchase cheap cell phones and frequently change them in order to evade investigative techniques by law enforcement. Agents seized approximately six firearms from the residence. BURLINGAME in not a prohibited person, but the weapons are evidence if used in relation to drug trafficking or another crime. Agents observed numerous pipes with what appeared to be drug residue. Agents seized a small amount of a substance, wrapped in plastic, which appeared to be hashish.

41. Based on this investigation, detailed in part above, I believe COOK and BURLINGAME have been trafficking large quantities of controlled substances in violation of 21 USC 841. I believe the 460 grams of methamphetamine and discovered in the Dewalt tool bag was part of a larger quantity of bulk methamphetamine, and the approximately $1,589.00 in U.S. currency was part of a larger quantity of bulk cash drug proceeds.

42.     Based on my training and experience, drug traffickers often conceal bulk cash drug proceeds and / or bulk controlled substances, as well as other evidence in a remote location in order to evade detection from law enforcement. I believe the **SUBJECT PREMISES** at 88/89 Wallner Dr., Veguita, NM is a remote location where COOK and BURLINGAME have concealed a larger quantity of bulk cash drug proceeds and / or bulk controlled substances, as well as other evidence of violations of 21 USC 841.

## CONCLUSION

Based on the information set forth in this application, and my training and experience, I respectfully submit that there is probable cause to believe that the instrumentalities, fruits, and evidence of violations of Title 21, United States Code Section 841 are present in the **"PaceArrow Vision" Motorhome, located at 88/89 Wallner Dr., Veguita, NM 87062** as more specifically described in Attachment A.

43.     I respectfully request that a warrant be issued authorizing Homeland Security Investigations, with appropriate assistance from other law enforcement officers, to enter the **Subject Premises** described in Attachment A and therein search for, seize, and examine the items set forth above and in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Special Agent Brett Finn
Homeland Security Investigations

Subscribed and sworn before me this 29th day of February, 2016.

_____
Steven C. Yarbrough
U.S. Magistrate Judge

11

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched consists of a "PaceArrow Vision" motorhome. A license plate has not been observed on the motorhome, so registration information including registered owner is not available. The motorhome is located approximately 10 yards southeast of the address 88/89 Wallner Dr., Veguita, NM 87062. (also marked as 89 Wallner Dr.). This address is located in Socorro County, in the State and District of New Mexico. On the driver's side, passenger side, and front of the property are labeled with the words "PaceArrow Vision," which refers to a model of motorhome known to be manufactured by Fleetwood RV, Inc. These words are grey in color with a red outline. The base color of the vehicle is white. There are decorative lines along the sides of the vehicle in the colors of red, blue and grey. The roof of the motorhome is white.

In photos, "PaceArrow Vision" motorhome circle in red:



Below is a Google satellite image of 88 Wallner Dr., Veguita, NM 87062 and the surrounding area, as noted below within the yellow circle. The "PaceArrow Vision" motorhome does not appear in the satellite image and is estimated here. The area to be searched is the motorhome and 10 yards immediately around the motor home not to include any other structure or vehicle on the property.



## ATTACHMENT B

### ITEMS TO BE SEIZED AND SEARCHED

1. Illegal drugs;

2. Drug related equipment, paraphernalia, packaging material, weapons (including rifles, shotguns and handguns) related to the conspiracy to distribute illegal drugs, distribution of illegal drugs, possession with intent to distribute illegal drugs and money laundering;

3. Written records and documents concerning the manufacturing and distribution of illegal drugs including: drug ledgers, coded, cryptic, or plain text pay and owe records pertaining to sales of illegal drugs, amounts due, amounts collected, or amounts paid for the illegal drugs;;

4. Personal and business books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of illegal drugs;

5. Items of personal and business property that identify the person(s) associated with the residence, occupancy, control, or ownership of the Subject Premises, including but not limited to regulatory agency licenses, canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, other identification documents, and keys;

6. Documents indicating travel, in particular transportation between countries known to manufacture illegal drugs and the United States, including airline tickets, notes and travel itineraries; airline schedules; bills; charge card receipts; hotel, motel, and car rental statements; correspondence with travel agencies and other travel-related businesses; airline, car rental, and hotel frequent flier or user cards and statements; passports and visas; telephone bills; photographs of foreign locations; and papers relating to domestic and international travel disclosing acquisition of assets and personal or business expenses;

7. Income tax returns, W-2 and W-4 forms, receipts, and other documents pertaining to the filing of personal and business tax returns;

8. Written business documents, ledgers, address books, telephone toll records, notes, messages, photographs, and video films, and encrypted memoranda indicating drug sales, debts, and criminal affiliates; wire transfer records, money orders, and cashier's checks; bank account records, including checking and savings;

9. The seizing of any electronic devices, including cellular telephones, for drug-trafficking-related evidence, including text messages, phone numbers, customer lists, photographs, and videos.

10. Proceeds and evidence of proceeds including: United States currency, money

orders, cashier's checks, precious metals, jewelry, stocks and bonds or related investments, firearms, vehicles, real property, or stolen goods, Federal and State tax records, loan records, mortgages, deeds, titles, certificates of ownership, and registration of documents, records disclosing investments and securities, safe deposit box rental records and keys and photographs; and

   11. Latent prints from seized items or from surfaces at locations searched.

   12. During the course of the search, photographs and video of the searched premises may also be taken to record the condition thereof and/or the location of items therein.